**Theodore Robert WILLOUGHBY, Appellant,**

v.

**POTOMAC ELECTRIC POWER COMPANY, Appellee.**

No. 96–7001.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1996.

Decided Nov. 26, 1996.

---

Paul Victor Jorgensen, Middletown, MD, argued the cause for the appellant. Matthew Charles Leefer, Boonsboro, MD, was on brief.

William P. Flanagan argued the cause for the appellee. Patricia R. Ambrose, Washington, DC, was on brief.

Before: WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Theodore R. Willoughby (Willoughby) appeals the district court's grant of summary judgment to his former employer, the Potomac Electric Power Company (PEPCO), on Willoughby's claims that he was fired in violation of both his employment contract and the terms of a consent decree in a class action suit brought by certain PEPCO employees against PEPCO. He also appeals the district court's stay of discovery and its refusal to allow him to add two claims to his complaint. We affirm.

## I. BACKGROUND

From 1986 until his firing in 1993, Willoughby was a supervisor in PEPCO's drafting department. He had no written employment contract. In September and October 1992, two of his subordinates alleged that Willoughby, a white male, made inflammatory racist and sexist remarks to them. He denies the charge.

Also from 1986 to 1993, PEPCO was defending a class action suit brought by named and unnamed PEPCO employees and appli-

cants who claimed they had suffered racial and sexual discrimination (class action plaintiffs). The subordinates who complained of Willoughby's alleged remarks were named plaintiffs in the suit. The suit ended in a consent decree entered into by PEPCO and the class action plaintiffs that committed PEPCO to, among other things, changes in its personnel policies, establishment of a settlement fund and implementation of a procedure by which the named plaintiffs could request corrective personnel actions. Consent Decree at 13–34, 35–42, 42–46, *In re PEPCO Employment Litigation* (D.D.C. 1993) (No. CA 86–0603), *reprinted at* JA 69–90, 91–98, 98–102. The consent decree also released PEPCO and its officers and employees from any of the class action plaintiffs' claims related to the litigation. *Id.* at 9–11, *reprinted at* JA 65–67.

Willoughby was fired on June 4, 1993, shortly before the consent decree went into effect. According to PEPCO, his firing was based on race and sex discrimination complaints made by his subordinates.

## II. DISCUSSION

### A. Breach of Contract

Willoughby argues that the district court erred when it granted summary judgment to PEPCO on his claim that he was terminated in violation of an employment contract that allowed termination only for cause. We review the grant of summary judgment *de novo. Choate v. TRW, Inc.,* 14 F.3d 74, 77 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2710, 129 L.Ed.2d 837 (1994).

■ In the District of Columbia, whose law we apply in this action brought under our diversity jurisdiction, the employment relationship is presumed to be terminable at will by either employer or employee. *See Sullivan v. Heritage Found.,* 399 A.2d 856, 860 (D.C.1979). Attempting to rebut this presumption, Willoughby directs our attention to

an oral promise PEPCO's chief draftsman allegedly made at the time of Willoughby's 1986 promotion and to a provision in the 1982 version of PEPCO's affirmative action plan. Regarding the promise,[1] this court has held that a mere promise of permanent employment is insufficient to rebut the presumption of at will employment. *See Minihan v. American Pharm. Ass'n,* 812 F.2d 726, 728 (D.C.Cir.1987) (employer's statements indicating that employee had long-term or "permanent" employment do not rebut presumption of at will employment); *see also Jankins v. TDC Management Corp.,* 21 F.3d 436, 443 (D.C.Cir.1994) (same); *Choate,* 14 F.3d at 77 (same).

■ As to the provision in the affirmative action plan, District of Columbia case law does reflect that in some limited circumstances an unambiguous, uncaveated statement in a personnel manual may rebut the presumption of at will employment. *See, e.g., Nickens v. Labor Agency of Metro. Wash.,* 600 A.2d 813, 817 (D.C.1991); *Law v. Howard Univ.,* 558 A.2d 355, 356 n. 1 (D.C. 1989); *Washington Welfare Ass'n v. Wheeler,* 496 A.2d 613, 616 (D.C.1985). Relying on this line of cases, Willoughby points to PEPCO's statement in the 1982 version of its affirmative action plan that "[e]mployees shall not be discharged unless for just cause." JA 266. Even assuming that the 1982 version of the affirmative action plan was promulgated in a manner that could have affected Willoughby's employment status,[2] PEPCO's subsequent revision of the plan undermines his claim.

■ In 1990, PEPCO revised its affirmative action plan, deleting the just cause provision. Instead, the relevant provision states only that "[e]mployees shall not be discharged for unlawful discriminatory reasons." JA 483. Subsequent revisions, including the 1993 revision in effect at the time of Willoughby's firing, contain the same language. JA 491. That PEPCO can and did

---

1. At this stage we assume that the promise was made as Willoughby alleges. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (on summary judgment, facts are to be viewed in light most favorable to non-moving party).

2. This point is not at all clear. Willoughby's written but undated acknowledgment that he had received a copy of the affirmative action plan, for example, does not appear to have been connected in any way to his promotion and, in any event, manifests simply his receipt of same. JA 285.

make unilateral changes to its affirmative action plan suggests that the plan did not confer contractual rights on PEPCO employees. *See, e.g., Shankle v. DRG Fin. Corp.,* 729 F.Supp. 122, 124 (D.D.C.1989) (finding that employer's ability to amend personnel manual undermines claim that manual confers contractual rights). More to the point, the revisions eliminate the very language upon which Willoughby's argument depends.

██ Willoughby does not contend that PEPCO lacked the power unilaterally to revise its affirmative action plan. Instead, he argues that it was error for the district court to rely on the revised version because it was not accompanied by an affidavit or some other indicia of authenticity and because PEPCO provided only brief excerpts. Regarding the latter point, PEPCO appears to have given Willoughby complete copies of all of the revisions during discovery. Defendant's Reply in Support of Motion for Summary Judgment, and Reply in Support of Motion for Stay of Further Discovery at 13, *Willoughby v. Potomac Elec. Power Co.* 1995 WL 761308 (D.D.C.1995) (No. CA 94–1313). More important, if Willoughby believed the excerpts suffered from some evidentiary flaw, he could (and should) have objected during the fifteen-month period between September 1994, when PEPCO attached a copy to its reply brief, and the district court's grant of summary judgment in December 1995.[3] *See Passaic Daily News v. NLRB,* 736 F.2d 1543, 1554 n. 15 (D.C.Cir.1984) ("It is axiomatic that 'a failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission.'" (quoting C. McCormick, *Handbook of the Law of Evidence* 113 (2d ed.1972))). We will not entertain his objection now and instead conclude that the district court correctly determined that his employment was terminable at will.

### B. Violation of Consent Decree

██ Willoughby next argues that the district court erred when it granted summary

judgment to PEPCO on his claim that the consent decree agreed to by PEPCO and the class action plaintiffs protected him, as a third party beneficiary, from adverse actions arising from the discrimination litigation. He points principally to language in the consent decree barring claims by the class action plaintiffs against PEPCO or its employees. Consent Decree at 9, *reprinted at* JA 65. As a PEPCO employee, the consent decree did protect Willoughby from claims by the class action plaintiffs. *See, e.g., Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 286 (D.C.Cir.1993) (intended third party beneficiaries may sue to enforce their rights under consent decree). The plain language of the provision upon which Willoughby relies, however, manifests that the right of PEPCO employees to be protected from claims governs claims by the class action plaintiffs only, not personnel actions by PEPCO. Indeed, it would make no sense for PEPCO to have sought protection from personnel actions by PEPCO.

Neither of the other consent decree provisions Willoughby cites provides any more support for his position. As PEPCO points out, the provision requiring PEPCO to issue a statement that it would not tolerate retaliation against employees "involved in this litigation" does not create an obligation to do anything other than issue the statement. Consent Decree at 29, *reprinted at* JA 85. More substantively, there is absolutely no evidence that PEPCO fired Willoughby based on his "participation" as a potential witness listed by the class action plaintiffs in the litigation.

The consent decree provision stating that job relief for the class action plaintiffs will not come at the expense of other employees is likewise unavailing. Consent Decree at 45, *reprinted at* JA 101. Although Willoughby argues that one of the class action plaintiffs, Alphonso Fields (Fields), benefited from his firing (because he was no longer Fields's

---

**3.** We note that Willoughby's counsel has been less than candid regarding his access to and knowledge of the revised version. Despite PEPCO's production of the policies during discovery, at oral argument Willoughby's counsel asserted that "I frankly don't know whether or not this is the only provision that deals with termination" and "we only had a chance to look at certain documents." These assertions are hard to square with the record.

supervisor), he offers no evidence suggesting that PEPCO fired him to accommodate Fields. A jury could only conclude that any benefit Fields reaped as a result of Willoughby's firing was merely fortuitous. Neither is there any evidence upon which a jury could conclude that Willoughby was fired to make room for a class action plaintiff. In fact, his replacement was another white male. JA 524.

## C. Other Issues

■■■ Willoughby argues that the district court cut off discovery before he had a fair opportunity to marshal the evidence necessary to defeat PEPCO's motion for summary judgment. A district court's decision to stay discovery is reviewed for abuse of discretion. *See, e.g., Stitt v. Williams,* 919 F.2d 516, 526 (9th Cir.1990). Willoughby conducted extensive discovery before PEPCO moved for summary judgment and did not alert the court that he required further discovery pursuant to Federal Rule of Civil Procedure 56(f) to support his opposition to the motion. In these circumstances, we conclude that the district court did not abuse its discretion by refusing to allow further discovery.

■■■ Willoughby argues that the district court abused its discretion by not allowing him to add to his complaint claims based on Title VII of the Civil Rights Act of 1964 and on the District of Columbia Human Rights Act. The decision whether to allow a plaintiff to amend his complaint is also reviewed for abuse of discretion but leave to amend should be freely given unless there is a good reason, such as futility, to the contrary. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Futility provides a good reason here. Willoughby

neither met the requirements to establish a *prima facie* case of discrimination pursuant to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny nor presented direct evidence of discrimination. Willoughby points to no evidence thatPEPCO fired him because of any animus against white males and appears to have had no prospect of uncovering any such evidence.[4] With little chance of a successful Title VII claim, the district court did not abuse its discretion in concluding Willoughby was not entitled to add the claim to his complaint.

A claim under the District of Columbia Human Rights Act likewise would have been futile. Those claims must be brought within one year from the date the alleged violation occurs or is discovered. D.C.Code Ann. § 1–2544 (1981). Willoughby was discharged on June 4, 1993 and did not seek to amend his complaint until more than one year later, in September 1994. His original complaint gave no notice that he was claiming a violation of the Human Rights Act and he points to no new information or other evidence suggesting that he discovered the alleged violation after his termination.[5]

Finally, while Willoughby originally sought reinstatement of count five (constructive fraud) of his complaint as part of his request for relief in his opening brief to this court, he failed to present any argument on the issue. His minimal attempt to save the issue in his reply brief, Appellant's Reply Br. 18–19, is fruitless. *See Board of Regents of Univ. of Wash. v. EPA,* 86 F.3d 1214, 1221 (D.C.Cir. 1996) (issues not raised until reply brief generally are waived).

Because summary judgment in favor of PEPCO on Willoughby's claims that PEPCO

---

**4.** Even if, as Willoughby claims, PEPCO fired him based on unsubstantiated accusations of racial and sexual harassment, that would not support his Title VII claim. *See Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (absent discriminatory intent, employment decisions that are unwise, unfair or ignore regulations do not violate Title VII); *see also Holder v. City of Raleigh,* 867 F.2d 823, 825–26 (4th Cir.1989) (nepotism alone, without discrimination on basis of race, color, religion, sex or national origin, does not violate Title VII).

**5.** Furthermore, Willoughby's Human Rights Act claim suffers from the same substantive flaws as his Title VII claim. There is no indication he could establish that PEPCO fired him on the basis of his "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, disability, matriculation, or political affiliation." D.C.Code Ann.§ 1–2512(a) (1981).

breached his employment contract and violated the consent decree was appropriate and because the remainder of Willoughby's assignments of error is likewise unconvincing, the judgment of the district court is

*Affirmed.*