Joseph E. TAYLOR, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Defendant.

**No. CIV.A. 93–891 SSH.**

United States District Court, District of Columbia.

July 10, 2000.

**12**

Douglas B. Huron, Richard A. Salzman, Heller, Huron, Chertkof, Lerner, Simon & Salzman, Washington, DC, for Plaintiff.

1. WMATA is the sole remaining defendant, as defendant Fady P. Bassily was voluntarily dismissed on August 24, 1993.

2. The Court briefly recounts the details on this case; a more detailed description is set forth in the Court's April 2, 1996, Opinion. *Taylor v. WMATA*, 922 F.Supp. 665 (D.D.C. 1996). In 1986, plaintiff reported that a supervisor, Bassily, gave an instruction that apparently violated WMATA's safety rules; WMATA investigated the incident and issued a report critical of the instruction. In 1991, while plaintiff was salaried at a TA–22 pay grade, he was reassigned to a newly-created position that was salaried at a TA–24 pay grade. He was informed, however, that he was ineligible to receive an upgrade from TA–22 to TA–24. Plaintiff did not pursue the issue then. Several months later during his yearly performance evaluation, he again questioned why he was not salaried at TA–24. His supervisor informed him that the position did not necessarily support an upgrade to TA–24, and

Sonia A. Bacchus, Bruce P. Heppen, Assistant General Counsel, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are (1) defendant Washington Metropolitan Area Transit Authority's ("WMATA") motion to dismiss for lack of jurisdiction, plaintiff's opposition thereto, WMATA's reply, and supplemental notices of filing, and (2) plaintiff's motion to set a trial date, reconsider the dismissal of common law claims and amend the complaint, and defendant's opposition and plaintiff's reply thereto.[1] In light of recent caselaw and upon consideration of the entire record, the Court grants WMATA's motion and denies plaintiff's motion. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). The Court nonetheless sets forth its reasoning.

## Background

Plaintiff Joseph Taylor is an employee of WMATA.[2] He commenced this suit then reassigned him to a different position where the TA–24 upgrade was available. His supervisor also indicated that plaintiff would be evaluated every six months for two years, and that he would be upgraded if he achieved an "Above Satisfactory" overall rating on his yearly performance; the supervisor also indicated that future occurrence of any unsatisfactory performance would result in demotion or termination. Plaintiff then filed an internal grievance, protesting his supervisor's actions and alleging that Assistant General Manager Bassily constantly threatened him because of his age and longevity. Two employees subsequently reported that plaintiff made a string of invectives directed toward the Assistant General Manager, specifically regarding his ethnic origin; plaintiff denied making these comments. As a result, he was demoted. Plaintiff pursued internal grievance procedures, alleging in part that he was not given proper procedures prior to the demotion. Ultimately, plaintiff filed a charge of age discrimination and retaliation with the

against WMATA on the basis of three counts: (1) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623, *et seq.*, for refusing to promote him and for ultimately demoting him, and retaliation under the ADEA for demoting him after he filed an internal grievance alleging age discrimination ("Count One"), (2) breach of employment contract by disciplining plaintiff without affording him an opportunity to be heard ("Count Two"), and (3) the common law tort of "wrongful demotion" for refusing to follow certain directives that allegedly violated safety rules and instead reporting the supervisor who gave the directives ("Count Three").

The Court dismissed both Counts Two and Three, as well as Count One to the extent that it alleged age discrimination for refusing to promote him. *See* 922 F.Supp. at 671–75. Only his allegations of age discrimination under the ADEA with respect to demotion and retaliation in Count One remained. On the eve of trial, WMATA and plaintiff filed several motions in limine, which remain pending, and the Court subsequently vacated the trial date.

■ WMATA thereafter filed the instant motion to dismiss the remaining claims for lack of jurisdiction, contending that it is immune from suit under the Eleventh Amendment because the ADEA failed to abrogate state sovereign immunity.[3] On March 26, 1999, the Court stayed decision of WMATA's motion to dismiss, pending the Supreme Court's resolution of the constitutionality of the ADEA.

On January 11, 2000, the Supreme Court held that although the ADEA reflects a clear intent to abrogate the states' sovereign immunity, the abrogation exceeded Congress' authority under Section 5 of the Eleventh Amendment. *Kimel v. Florida Board of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Shortly after that decision was issued, plaintiff filed a motion to set a trial date and to reconsider the Court's dismissal of Counts Two and Three based on subsequent caselaw. Plaintiff also seeks to amend the complaint by adding two new counts: wrongful demotion for reporting age discrimination in violation of public policy of the District of Columbia, and violations of District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 1–2512, 2525, for refusal to promote, demotion, and retaliation.

## Analysis

### I. Count One: Retaliation and Demotion under the ADEA

■ The Eleventh Amendment protects unconsenting states from suit in federal court by their own citizens as well as those of another state. *Pennhurst State School v. Halderman,* 465 U.S. 89, 98–9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This principle, however, is limited by several well-established exceptions. One such exception is that Congress may specifically abrogate state sovereign immunity by enacting legislation that: (1) articulates an unequivocal congressional intent to abrogate state sovereign immunity, and (2) is passed "pursuant to a valid exercise of power." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

■ Plaintiff sued WMATA for age discrimination on the basis of the ADEA,

EEOC, and also commenced this suit against WMATA and Bassily. The EEOC subsequently found no discrimination or retaliation and dismissed plaintiff's charge.

3. It is well-settled that WMATA enjoys state sovereign immunity pursuant to the Eleventh Amendment. *Hess v. Port Authority,* 513 U.S. 30, 49–50, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). WMATA was established by an inter-state compact entered into by Maryland, Virginia, and the District of Columbia. Pub.L. No. 89–774, 80 Stat. 1324 (1966), as amended. In signing the WMATA Compact, the three jurisdictions conferred upon WMATA their respective sovereign immunities. *See Morris v. WMATA,* 781 F.2d 218 (D.C.Cir. 1986).

legislation which purportedly abrogated state sovereign immunity. The Supreme Court's decision in *Kimel*, however, held that the ADEA did not abrogate the states' sovereign immunity. The *Kimel* decision adequately discusses the rationale for this conclusion, and the Court need not provide further analysis. Furthermore, this Circuit recently decided that, under the reasoning of *Kimel*, WMATA is immune from suit under the ADEA. *Jones v. WMATA*, 205 F.3d 428 (D.C.Cir.2000).[4] In light of these decisions, the Court finds that WMATA is immune from ADEA claims in this court, and therefore dismisses the remaining claims in Count One.

## II. Reconsideration of Dismissal of Counts Two and Three

### A. Count Two: Breach of Contract

Plaintiff moves the Court to reconsider its dismissal of his breach of contract claim. He claims that WMATA's Personnel Policies and Procedures Manual created an contractual right to be heard on allegations of certain offenses before further action is taken, and thus, WMATA breached its contract in demoting plaintiff without interviewing him first. The Court dismissed the count because it found that plaintiff was an "at-will" employee, and the personnel manual did not create a contract of employment. *See* 922 F.Supp. at 673–74.

Plaintiff now adds that new caselaw clarifies that personnel manuals may create contractual rights in the District of Columbia, and that ambiguities about the intent of the parties should be determined by a jury. In particular, plaintiff cites *Strass v. Kaiser Foundation Health Plan*, in which the D.C. Court of Appeals stated that "[t]he terms of an employer's personnel or policy manual may be sufficient to raise a jury question as to whether the manual creates contractual rights for the employee." 744 A.2d 1000, 1011 (D.C.2000).

■ The Court rejects plaintiff's argument. *Strass* does not create, as plaintiff claims, new caselaw on this point. It has long been established that employment without a specific term of duration is presumed to create an at-will employment, but that the presumption may be rebutted with evidence—including evidence in a personnel manual—that the parties intended otherwise. *E.g., Willoughby v. PEPCO*, 100 F.3d 999, 1001 (D.C.Cir.1996); *Littell v. Evening Star Newspaper Co.*, 120 F.2d 36, 37 (D.C.Cir.1941); *see also Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 728 (D.C.Cir.1987) (after considering evidence including personnel manual, court found no evidence of intent to rebut presumption). In fact, the Court's April 2, 1996, Opinion acknowledged that a personnel manual can transform the employment relationship from at-will to permanent, if plaintiff could "point to specific statements in the Manual that clearly reflect the parties' intent to transform the employment relationship from at-will to permanent." 922 F.Supp. at 674. In that Opinion, the Court considered the clause which plaintiff again points out in his latest submission, but specifically found that this clause is "insufficient to create a genuine issue of fact as to whether the Manual was a contract, since that language does not state, clearly or otherwise, the intent of WMATA and its employees to bind themselves to something other than an at-will contract." *Id.* at 674 n. 6.[5] The

---

**4.** Plaintiff also asserts that WMATA's sovereign immunity was waived by § 80 of the WMATA Compact, an interstate compact that established WMATA, entered into by Virginia, Maryland, and the District of Columbia to operate a mass transit system. Pub.L. No. 89–774, 80 Stat. 1324 (1966). The Court rejects such an assertion. "WMATA has consented to be sued for torts committed in the performance of proprietary functions and such suits may be brought in United States District Courts," but "WMATA has expressly retained its immunity from suit for torts committed in the performance of governmental functions." *Morris*, 781 F.2d at 221 (quotations omitted).

**5.** Furthermore, the Court noted that even if the Manual could be found to constitute an

Court therefore found that "plaintiff has pointed to nothing in the Manual that evinces an intent to create an employment contract for a fixed period of time, [and therefore] summary judgment is appropriate." *See id.* at 674. The plaintiff's current submissions provide no new information to change the Court's decision, and thus, the Court declines to reconsider its dismissal of Count Two.

## B. Count Three: Wrongful Demotion for Whistleblowing

Count Three of plaintiff's original complaint asserted a common law claim of wrongful demotion, alleging that he was demoted as a part of a pattern of retaliatory treatment because he refused to follow certain directives given by supervisor Bassily that violated safety rules, and because he then reported Bassily. The Court dismissed this claim because under *Adams v. George W. Cochran & Co. Inc.,* 597 A.2d 28 (D.C.1991), the only exception to the at-will employment doctrine is if the employee was fired for refusing to violate the law. The Court found that plaintiff's situation did not fit this narrow public policy exception, but more appropriately fit the "whistleblower" situation, which the D.C. Court of Appeals held in *Gray v. Citizens Bank of Washington,* 602 A.2d 1096, 1097 (D.C.1992), could not support a wrongful discharge action.

Plaintiff now asserts that the Court must reconsider the dismissal in light of the subsequent overruling of *Gray.* In *Carl v. Children's Hospital,* 702 A.2d 159 (D.C. 1997), the D.C. Court of Appeals clarified that the narrow exception recognized in *Adams* was not the only public policy exception to the at-will employment doctrine, but that other public policy exceptions such as a whistleblower situation, exist. WMATA opposes reconsideration for three reasons: (1) the Court lacks jurisdiction over all wrongful demotion claims sounding in tort against WMATA because WMATA is immune from tort claims based on discretionary decisions; (2) although *Carl* expanded the public policy exception to the at-will employment doctrine, it applies only to discharges, not demotions; and (3) plaintiff cannot establish a *prima facie* case of retaliation for his alleged whistleblowing. The Court finds that WMATA is immune from tort claims based on discretionary decisions, and even if it were not, that plaintiff has not established a *prima facie* case of retaliation for whistleblowing. The Court need not reach WMATA's remaining defense that *Carl* does not apply to demotions.[6]

### (1) WMATA's Immunity for Discretionary Decisions

Section 80 of the WMATA Compact provides that WMATA "shall be liable for its torts ... committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function." D.C.Code Ann. § 1–2431 at § 80. This Circuit has established tests for determining when an activity is "governmental" and thus accorded immunity. *See Beebe v.*

employment contract, WMATA did not violate the relevant terms of the Manual. *See id.* at 674 n. 7.

**6.** Whether *Carl* reaches demotions is a question of first impression in the District of Columbia, and best left for the District of Columbia courts to decide. The Court notes, however, that if the public policy exception does reach demotions because of whistleblowing activities, the Court is doubtful that plaintiff was demoted solely, or even substantially, for engaging in alleged whistleblowing activi-

ty. *See Wallace v. Skadden Arps, Slate, Meagher & Flom,* 715 A.2d 873, 886 (D.C. 1998) (finding that plaintiff was not terminated solely, or even substantially, for engaging in conduct protected by such an exception). Plaintiff's demotion occurred over six years after plaintiff reported the alleged safety violations. *See id.* at 885 (reporting of alleged alteration of documents occurred nearly two years before plaintiff's discharge, and many other events supporting a reason for discharge occurred during that time).

*WMATA,* 129 F.3d 1283, 1287 (D.C.Cir. 1997); *Burkhart v. WMATA,* 112 F.3d 1207, 1216–17 (D.C.Cir.1997). An activity that amounts to a "quintessential" governmental function, such as law enforcement, is clearly "governmental" and falls within the scope of sovereign immunity. *Beebe,* 129 F.3d at 1287. For activities that are not quintessential governmental functions, the Court must consider whether the activity is "discretionary" or "ministerial." *Id.* Only if the activity is "discretionary" will it be considered "governmental" and therefore protected by sovereign immunity. *Id.* An activity that is found to be "ministerial" is not protected by sovereign immunity.

How to distinguish between discretionary and ministerial activities can be difficult. The Supreme Court has stated that a discretionary function "is one that involves choice or judgment." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In *Beebe v. WMATA,* the D.C. Circuit set forth a test from this definition:

> To determine whether an activity is discretionary, and thus shielded by sovereign immunity, we ask whether any statute, regulation, or policy specifically prescribes a course of action for an employee to follow. If no course of action is prescribed, we then determine whether the exercise of discretion is grounded in social, economic, or political goals. If so grounded, the activity is "governmental," thus falling within section 80's retention of sovereign immunity.

129 F.3d at 1287 (internal quotations and citations omitted); *see also Burkhart,* 112 F.3d at 1217.

Based on this standard, the D.C. Circuit has determined that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart,* 112 F.3d at 1217; *see Smith v. WMATA,* No. 97–7071, 1998 WL 315575 (D.C.Cir. May 28, 1999) ("The doctrine of sovereign immunity bars appellant's tort claims against his employer, as the claims arise from the employer's discretionary actions in the course of the administration of its personnel system."); *Hensley v. LaPorte and WMATA,* No. 98–7163, 1998 WL 929772 (D.C.Cir. Dec.30, 1998). That conclusion largely was based upon the observation that "[e]mployment decisions require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition." *Beebe,* 129 F.3d at 1287 (internal quotations omitted); *see Burkhart,* 112 F.3d at 1217.

For example, an decision to reorganize an office which eliminates certain positions is a discretionary act. *See Beebe,* 129 F.3d at 1288 (dismissing WMATA employee's tort claims arising out of a personnel reorganization); *see Smith v. WMATA,* 1997 WL 182286 (D.D.C. Apr.4, 1997) (same). In *Burkhart v. WMATA,* a passenger's tort claims against WMATA for negligent hiring, training, and supervision of its bus drivers were dismissed because such activities fell within the scope of discretionary activities. *Burkhart,* 112 F.3d at 1217. In *Jones v. WMATA,* 1992 U.S. Dist. LEXIS 11504, at *15 (D.D.C., Aug. 7, 1992), a plaintiff brought tort claims of discriminatory and retaliatory discharge and failure to promote against WMATA, because WMATA had not promoted plaintiff after she applied unsuccessfully for eight promotions in three years. The Court determined that "[h]ow WMATA chooses to administer its employees is certainly a discretionary decision and therefore a governmental function," and dismissed her tort claims.

■ As the *Beebe* Court noted, "not every action connected in some way to an employment decision amounts to a discretionary function." *Beebe,* 129 F.3d at 1288. Here, however, the Court finds that the demotion complained of by plaintiff amounts to a discretionary choice made by WMATA in its administration of person-

nel. WMATA therefore is immune from this tort claim.

### (2) *Prima Facie* Case of Retaliation

 Even if WMATA were not immune from this tort claim, the Court finds that plaintiff has not established a *prima facie* case of retaliation on the basis of his alleged whistleblowing activity.[7] To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity, (2) the employer took an adverse personnel action, and (3) there was a causal connection between the two. *See McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here, even if plaintiff shows that he engaged in a protected activity and that WMATA demoted him, the Court finds insufficient evidence to conclude that a causal connection existed between the two. Plaintiff reported the safety incident in 1986; six years later, during which period various events led plaintiff to file an internal grievance alleging age discrimination, plaintiff was demoted. The Court finds that this passage of time alone makes any causal connection unlikely; furthermore, plaintiff does not assert that his discharge was solely or even substantially because he reported a safety violation. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 886 (D.C.1998) (where nearly two years and numerous events had intervened between the time plaintiff complained of ethical violations by supervising attorneys and the time she was discharged, court found no causal connection).

### III. Amendment of Complaint

Plaintiff seeks to amend his complaint by adding two claims: a common law claim of wrongful demotion in retaliation for alleging age discrimination, and a claim for violations of the DCHRA based on age discrimination and retaliation. At this stage of the proceedings, plaintiff may amend his complaint "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). Though the Rule provides that "leave shall be freely given when justice so requires," *id.*, denial of leave to amend is appropriate in cases of "undue delay, . . . repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C.Cir.1996).

### A. Proposed Count Four: Wrongful Demotion for Protesting Age Discrimination

In addition to requesting reinstatement of Count Three, which asserts the common law tort of wrongful demotion in retaliation for an alleged whistleblowing act, plaintiff seeks to add a common law claim of wrongful demotion in retaliation for complaining about age discrimination. Plaintiff argues that a wrongful demotion claim for retaliation against complaining about age discrimination is clearly contained in the public policy of the District of Columbia, as the DCHRA expressly declares such conduct to be unlawful. Plaintiff also claims that WMATA would suffer no prejudice from adding this claim since the facts underlying this claim are the same as those underlying the ADEA claim, and WMATA has completed all of the discovery relating to the facts related to this claim, and was prepared to defend this claim at trial.[8]

In its earlier Opinion, the Court did find that plaintiff presented sufficient evidence

---

**7.** In its April 2, 1996, Opinion, the Court did not reach the issue of whether plaintiff had established a *prima facie* case of retaliation with respect to his whistleblowing activity, because the Court dismissed the claim on the basis of then-existing D.C. law, which did not clearly establish a "whistleblower" exception

to the at-will employment doctrine. 922 F.Supp. at 674–75.

**8.** Plaintiff also argues that since the facts underlying this claim are the same as those previously litigated under the ADEA count, and since no new parties are being added, the

to sustain a *prima facie* case of retaliatory demotion for protesting age discrimination under the ADEA. *See* 922 F.Supp. at 673.[9] However, for the same reasons discussed in Part II(B)(1) of this Opinion, the Court finds that WMATA's decision to demote plaintiff arose in the course of administering its personnel system, and therefore, a tort claim arising out of that decision is barred on immunity grounds. The Court therefore finds that adding the claim would be futile, and denies leave to add the claim.

## B. Proposed Count Five: Violations of DCHRA

Plaintiff alleges that WMATA violated the DCHRA when it refused to promote him and subsequently demoted him; such conduct, he alleges, constituted age discrimination and retaliation for filing an age discrimination grievance. WMATA, however, argues that it is not subject to suit under the DCHRA, and therefore, adding a claim under the DCHRA would be futile because the proposed claim would not survive a motion to dismiss. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C.Cir.1996) ("futility" means inability to survive a motion to dismiss).

■■■ The Court agrees that adding a DCHRA claim would be futile. As noted, WMATA was established by a Compact signed by Maryland, Virginia, and the District of Columbia, and agreed upon by Congress. It is well-established that WMATA is not subject to the DCHRA because WMATA is an interstate compact agency and instrumentality of three separate jurisdictions. *See, e.g., Lucero-Nelson v. WMATA*, 1 F.Supp.2d 1, 7 (D.D.C. 1998) (dismissing DCHRA claims of sexual

harassment, national origin discrimination, and hostile working environment); *Jones*, 1992 U.S. Dist. Lexis 11504 at *15 (dismissing DCHRA claims of retaliatory and discriminatory treatment based on age, race, and sex); *see* 4 Op. of Corp. Counsel at 203, 205 (op. by then Acting Corp. Counsel Judith Rogers). The Court therefore denies plaintiff's motion to amend the complaint to add a claim under the DCHRA.[10] Accordingly, it hereby is

ORDERED, that the Court's stay is lifted. It hereby further is

ORDERED, that defendant's motion to dismiss is granted. It hereby further is

ORDERED, that plaintiff's motion to set trial date, reconsider the dismissal of common law claims, and amend the complaint is denied. It hereby further is

ORDERED, that plaintiff's and WMATA's pending motions in limine are denied as moot.

SO ORDERED.

---

claim should relate back and be deemed timely.

9. As discussed in Part I of this Opinion, however, the Court now dismisses that claim on sovereign immunity grounds on the basis of *Kimel*.

10. Even if WMATA were not immune from DCHRA claims, adding this claim would be futile since DCHRA claims must be brought within one year from the date the alleged violation occurs or is discovered. *Willoughby*, 100 F.3d at 1003. Plaintiff points to no new evidence suggesting that he discovered the violation within a year before he filed his motion to amend.