Jimmy L. DUNCAN, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.

Civ.A. No. 01–2360(GK).

United States District Court, District of Columbia.

April 1, 2003.

Julie Glass Martin, Zipin Melehy & Driscoll, Silverspring, MD, Suzanne L. Lawrence, North Bethesda, MD, for plaintiff.

Mark Francis Sullivan, Jeanette J. Clark, Washington Metropolitan Area Transit Auth., Washington, DC, Bruce Heppen, Washington, DC, for defendant.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff, Jimmy Duncan, brings this action against the Washington Metropolitan Area Transportation Authority ("WMATA") for employment discrimination in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Act"), 29 U.S.C. § 794. The matter is now before the Court on Defendant's Motion to Dismiss. Upon consideration of the Motion, Opposition, Reply, Surreply, and the entire record herein, for the reasons stated below, Defendant's Motion to Dismiss is **denied**.

## I. BACKGROUND

Plaintiff was employed by Defendant WMATA from 1986 through 1993 and again from 1997 through 2001. He was employed initially as a custodian and subsequently as an Automatic Fare Collector ("AFC") from November 1991 through December 1992.

In February 1992, Plaintiff was in an automobile accident, unrelated to his employment, which caused injury to his back. He subsequently returned to work and resumed his regular duties. *See Duncan v. WMATA*, No. 95–02360, slip op. at 2 (D.D.C. May 19, 1997) (*"Duncan I"*).

In December 1992, Defendant reassigned Plaintiff to the position of Parts Runner in its Elevator/Escalator Branch ("ELES"). On December 19, 1992, Duncan reinjured his back. As a result, Plaintiff contended that he was unable to continue performing his heavy-lifting ELES assignments. Plaintiff's supervisor informed him that no light-lifting jobs were available, and Duncan was placed on sick leave and then on leave without pay.

Plaintiff contended that he twice applied for vacant AFC positions in March and July 1993, but was not selected for these positions. In October 1993, Plaintiff was discharged from his ELES position.

On December 22, 1994, Plaintiff filed his first suit in the District Court for the District of Columbia, alleging that WMATA violated the Americans with Disabilities Act ("ADA") by discharging him on account of his disability and by failing to reasonably accommodate his disability. *See id.*

After a five-day trial, the jury entered a verdict on May 27, 1997, finding that WMATA had violated the ADA as alleged. Duncan was awarded compensatory damages of $125,000 on his wrongful termination claim and $125,000 on his reasonable accommodation claim. *Id.*, May 27, 1997 Judgment on the Verdict.

Subsequent to the jury verdict, WMATA reinstated Plaintiff to his previously held AFC parts runner position. He contends that he held that position for two-and-one-half years without incident and without need of any accommodation.

On March 2, 2001, the D.C. Circuit reversed the district court's order denying judgment as a matter of law and vacated the jury verdict. In so doing, it concluded that Duncan had failed to prove that he was disabled within the meaning of the ADA. *See Duncan v. WMATA*, 240 F.3d 1110, 1117 (D.C.Cir.2001) (en banc).

Subsequent to the D.C. Circuit ruling, on April 11, 2001, Duncan was again terminated from his position with WMATA. WMATA's Acting Superintendent of the Automatic Fare Collection Department, Office of Systems Maintenance, Charles Buettner, indicated that Duncan's reinstatement had been conditioned on the outcome of the appeal, and because he had lost the appeal, he was terminated effective immediately.

Since his termination, Plaintiff contends that he has unsuccessfully applied for the vacant AFC parts runner position he previously held.

On November 13, 2001, Plaintiff brought this action ("*Duncan II*"), alleging that his April 11, 2001 termination was in violation of Section 504 of the Rehabilitation Act. He further contends that, by failing to hire him for the vacant AFC parts runner position he previously held, Defendant violated the Rehabilitation Act.

In its Motion to Dismiss, Defendant contends, first, that WMATA is immune from suit under the Eleventh Amendment, and the Court therefore lacks subject matter jurisdiction. Second, Defendant argues that the Rehabilitation Act does not provide a cause of action for retaliation. Third, WMATA contends that, even if the Rehabilitation Act does create a cause of action for retaliation claims, Plaintiff cannot establish that he engaged in a protected activity under the Rehabilitation Act. Fourth, WMATA argues that Plaintiff cannot establish any causal nexus between his alleged protected activity and his April 11, 2001 termination.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to bear the burden of establishing, by a preponderance of the evidence, that the Court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C. 2001) (holding that the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 18 (D.D.C. 1998); *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989).

While the Court must accept as true all the factual allegations contained in the Complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), " 'plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6)

motion for failure to state a claim," because the plaintiff has the burden of proof to establish jurisdiction. *Grand Lodge of the Fraternal Order of Police,* 185 F.Supp.2d at 13–14 (citation omitted).

Finally, in deciding a 12(b)(1) motion, it is well-established in this Circuit that the Court is not limited to the allegations in the Complaint but may consider material outside of the Complaint in an effort to determine whether the Court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987).

### B. Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The factual allegations of the Complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear v. National Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir. 1979).

## III. ANALYSIS

### A. By Accepting Federal Rehabilitation Act Funds, WMATA Waived its Sovereign Immunity

#### 1. Waiver of Sovereign Immunity Generally

As noted above, Defendant contends that it possesses sovereign immunity under the Eleventh Amendment of the Constitution, and that the Court therefore lacks subject matter jurisdiction over Plaintiff's claims.

The Eleventh Amendment provides in pertinent part that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced

or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. It is well-established that this amendment, despite its express terms, also precludes citizens from bringing suit in federal court against their own states. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 13–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The Supreme Court has, however, recognized exceptions to the immunity guaranteed by the Eleventh Amendment. For instance, Congress may abrogate the immunity without state consent if it acts pursuant to a valid exercise of congressional power and unequivocally expresses its intent to do so. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In addition, a state may waive its Eleventh Amendment immunity by consenting to be sued in federal court. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, et al.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Seminole Tribe,* 517 U.S. at 63, 116 S.Ct. 1114 (acknowledging the "unremarkable … proposition that the States may waive their sovereign immunity") (citations omitted); *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Here, the parties do not dispute that WMATA possesses sovereign immunity. Indeed, Courts in this Circuit have consistently affirmed this principle. *See Jones v. WMATA,* 205 F.3d 428, 432 (D.C.Cir.2000); *Morris v. WMATA,* 781 F.2d 218, 219–20 (D.C.Cir. 1986); *Taylor v. WMATA,* 109 F.Supp.2d 11, 13 n.3 (D.D.C.2000).[1]

Instead, the parties dispute whether WMATA has waived this immunity. Specifically, Plaintiff contends that, by accepting federal Rehabilitation Act funds, WMATA voluntarily waived its immunity from suit under Section 504 of the Rehabilitation Act.

## 2. The Rehabilitation Act Amendments of 1986 Constitute a Valid and Unambiguous Waiver of States' Sovereign Immunity

It is well-established that states may waive their Eleventh Amendment immunity by accepting federal funds. Under the Spending Clause power of Article I, Congress is empowered to "lay and collect Taxes, Duties, Imposts, and Excises to pay the Debts and provide for the common Defense and general Welfare of the United States." Art. I, § 8, cl. 1.

As the Supreme Court repeatedly has recognized, "Congress has no obligation to use its Spending Clause power to disburse funds to the States; such funds are gifts." *See College Savings Bank,* 527 U.S. at 686–86, 119 S.Ct. 2219. Therefore, "Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions." *Id.* at 686, 119 S.Ct. 2219. Specifically, the federal government may condition a waiver of state sovereign immunity upon receipt of federal funds. *See Atascadero,* 473 U.S. at 238 n. 1, 105 S.Ct. 3142 (noting that "a State may effectuate a waiver of its constitutional immunity … by otherwise waiving its immunity to suit in the context of a particular federal program").

The Supreme Court has clarified, however, that the mere receipt of federal funds does not establish that a state has consented to suit in federal court. Instead, the statute must evince a "clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Id.* at 247, 105 S.Ct. 3142. Here, the plain language of the Rehabilitation Act Amendments of 1986 provides the clear and unambiguous waiver of states' sov-

---

1. WMATA was created by a compact enacted by Congress and to which the Commonwealth of Virginia, the State of Maryland, and the District of Columbia are signatories ("WMATA Compact"). The D.C. Circuit has consistently recognized that "in signing the WMATA Compact, Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions." *Jones,* 205 F.3d at 432.

ereign immunity required by *Atascadero*.[2]

In *Atascadero*, the Supreme Court held that the initial version of the Rehabilitation Act fell "far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Id.* As a result, the next year Congress adopted the Rehabilitation Act Amendments of 1986 ("Rehabilitation Act Amendments" or "Section 2000d-7"), which expressly provide that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7 (1986).[3]

The Supreme Court has recognized Section 2000d-7 as a valid and unambiguous waiver of states' Eleventh Amendment immunity. In *Lane v. Pena*, 518 U.S. 187, 200, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), the Supreme Court described Section 2000d-7 as an "unambiguous waiver of the States' Eleventh Amendment immunity." In so doing, it emphasized that the Rehabilitation Act Amendments were enacted in response to its decision in *Atascadero*. By enacting the Amendments, the Supreme Court reasoned, "Congress sought to provide the sort of unequivocal waiver that our precedents demand." *Id.* (evaluating parallel Title IX provision).[4]

Moreover, every court of appeals to address this issue, except the Second Circuit, has concluded that, by accepting federal funds, the state entities waived their Eleventh Amendment immunity. In so doing, they reasoned that Section 2000d-7 constitutes a clear and unambiguous waiver of states' sovereign immunity. *See Douglas v. California Dep't of Youth Authority*, 271 F.3d 812, 818-21 (9th Cir.2001) ("the clear waiver language of the Rehabilitation Act conditions the receipt of federal funds under the Rehabilitation Act upon a state's agreement to forgo the Eleventh Amendment defense"); *Nihiser*, 269 F.3d at 628 ("Section 2000d-7 is 'the most express language' of waiver of Eleventh Amendment immunity"); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir.2000) ("[w]e therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess"); *Pederson et al. v. Louisiana State University et al.*, 213 F.3d 858 (5th Cir.2000) ("we find that in 42 U.S.C. § 2000d-7(a)(a) [sic] Congress has successfully codified a statute which clearly, unambiguously, and unequivocally conditions receipt of federal funds under Title IX on the State's waiver of Eleventh Amendment Immunity"); *Jim C.*, 235 F.3d at 1081 (concluding that state "waived sovereign immunity, with respect to suits under Section 504 ... when it chose to participate in the federal spending program created by that Section"); *Litman v. George Mason University*, 186 F.3d at 554 (evaluating parallel Title IX provision and concluding that "Congress succeeded in its effort to codify a clear, unambiguous, and unequivocal condition of waiver of Eleventh Amendment immunity in 42 U.S.C. § 2000d-7(a)(1)"); *Sandoval v. L.N. Hagan*, 197 F.3d 484, 493 (11th Cir.1999) (concluding that the plain language of 42 U.S.C. § 2000d-7 "manifests an

---

2. It is undisputed that WMATA receives federal Rehabilitation Act funds.

3. The Rehabilitation Act Amendments also specifically provide that states shall not be immune from suit for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, the Age Discrimination Act of 1975, 42 U.S.C. § 6101, *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, "or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7.

4. Defendants contend that "no weight should be given" to this discussion in *Lane* because the Supreme Court referred interchangeably to abrogation and waiver of sovereign immunity. Def. Reply to Opp'n to Mot. to Dismiss at 4-5. However, the *Lane* Court's conclusion that the Rehabilitation Act Amendments created an "unambiguous waiver of the States' Eleventh Amendment immunity" was a critical element of the Court's holding that the Amendments do not waive the federal government's sovereign immunity. *Lane*, 518 U.S. at 200, 116 S.Ct. 2092. Indeed, numerous courts have relied on the *Lane* Court's conclusion that the Amendments constitute an unambiguous waiver of states' Eleventh Amendment immunity. *See Nihiser v. Ohio Environmental Protection Agency*, 269 F.3d 626, 628 (6th Cir.2001); *Jim C. v. United States*, 235 F.3d 1079, 1082 (8th Cir.2000); *Litman v. George Mason University*, 186 F.3d 544, 554 (4th Cir.1999).

unmistakable intent to condition federal funds on a state's waiver of sovereign immunity"), *reversed on other grounds by Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).[5]

Defendant argues that the reasoning of the Second Circuit—the only court of appeals to conclude that, by accepting federal Rehabilitation Act funds, the state did not waive its Eleventh Amendment immunity—compels a finding that WMATA did not waive its immunity here. *See Garcia v. S.U.N.Y,* 280 F.3d 98 (2d Cir.2001). Significantly, in reaching this conclusion, the Second Circuit did determine—as did every other court of appeals to address this issue—that Section 2000d–7 "constitutes a clear expression of Congress' intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." *Id.* at 113–14.

Nonetheless, the Second Circuit concluded that the state entity had not knowingly waived its immunity by accepting federal Rehabilitation Act funds because, at the time it received the funds, Title II of the ADA was understood to abrogate the state's sovereign immunity. The *Garcia* court reasoned that, since "the proscriptions of Title II and § 504 are virtually identical," the state would have believed that its sovereign immunity under the Rehabilitation Act was already abrogated as well, and the state therefore could not knowingly waive a right it believed it had already lost. *Id.* at 114.

This Court is not persuaded by the reasoning of the Second Circuit because Title II of the ADA and Section 504 of the Rehabilitation Act are simply not analogous statutes. Instead, the Court concludes—as did the Supreme Court and every court of appeals, including the Second Circuit, to address this issue—that Section 2000d–7 constitutes an "unambiguous waiver of the States' Eleventh Amendment immunity." *Lane,* 518 U.S. at 200, 116 S.Ct. 2092. Accordingly, by accepting federal Rehabilitation Act funds, despite this clear Congressional requirement, WMATA waived its Eleventh Amendment immunity.

Defendants further rely on *College Savings Bank,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605, in which the Supreme Court rejected the concept of a constructive or implied waiver of state sovereign immunity articulated in *Parden v. Terminal Ry. of Ala. Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). However, that case is inapplicable here. The *College Savings Bank* Court distinguished "conditions attached to a State's receipt of federal funds"—such as Section 2000d–7—from unconstitutional *"Parden* style conditions,"[6] concluding that the two "are simply not analogous." *Id.* at 678 n. 2, 685, 119 S.Ct. 2219 (concluding that Congress' "exercise of its spending power, condition[ing] its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions," are "fundamentally different" from the unconstitutional *Parden* conditions).

---

5. Defendants rely on the fact that the Eleventh and Eighth Circuits remanded this waiver question to the district courts. *See Garrett v. Univ. of Alabama,* 276 F.3d 1227, 1229 (11th Cir.2001); *Randolph v. Rodgers,* 253 F.3d 342, 348 (8th Cir.2001). In so doing, both courts of appeals concluded that the lower courts should consider whether the defendants had voluntarily waived their Eleventh Amendment immunity under Section 504 of the Rehabilitation Act by their receipt of federal funds conditioned upon such a waiver. These rulings do not advance WMATA's argument that it did not waive its sovereign immunity by accepting federal Rehabilitation Act funds. Instead, they merely indicate that the Eleventh and Eight Circuits properly deferred to the trial courts by remanding for consideration, in the first instance, an issue that had not been properly considered by the lower courts.

6. In *Parden,* the Supreme Court held that the state of Alabama had waived its sovereign immunity under the Federal Employers' Liability Act. In so doing, the *Parden* Court did not conclude that the state had expressed unequivocally that it waived its immunity or that Congress had unequivocally expressed its intention that if the state took certain action it would be deemed to have waived its immunity. Instead, the *Parden* Court concluded that Alabama's waiver of its Eleventh Amendment immunity was constructive or implied because of its "mere presence in a field subject to congressional regulation"—operation of a railroad in interstate commerce. *College Savings Bank,* 527 U.S. at 680, 119 S.Ct. 2219.

In sum, the Court concludes that Section 2000d–7 constitutes a valid and unambiguous waiver of states' Eleventh Amendment immunity. By accepting federal Rehabilitation Act funds, WMATA therefore waived its sovereign immunity from suit under Section 504 of the Rehabilitation Act.[7]

## B. The Rehabilitation Act Provides a Cause of Action for Retaliation

■ As noted above, Defendant also contends that the Rehabilitation Act does not provide a cause of action for retaliation. Specifically, WMATA contends that, "in contrast to the ADA and Title VII, the Rehabilitation Act lacks a statutory provision prohibiting retaliation for engaging in 'statutorily protected activity.'" Def. Mot. to Dismiss at 16. However, the text of the Rehabilitation Act is clear that Congress did create a cause of action for retaliation. Specifically, the Rehabilitation Act incorporates the standards of the ADA, one of which—Section 503—specifically prohibits retaliation.

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). Section 504 further clarifies that

[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12201–12204 and 12210), as such sections relate to employment.

*Id.* 794(d). Thus, Congress made it clear that, in determining whether an individual has been subjected to discrimination in violation of Section 504, one of the standards to be applied is Section 503 of the ADA.

Section 503 of the ADA, in turn, specifically prohibits retaliation. It provides that

(a) Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

42 U.S.C. § 12203(a).

Accordingly, by incorporating Section 503 of the ADA into the Rehabilitation Act, Congress included retaliation as a form of employment discrimination prohibited by the Rehabilitation Act.[8] *See Hiler v. Brown,* 177 F.3d 542, 545 (6th Cir.1999) ("the anti-retaliation provision of the Rehabilitation Act,

---

7. Defendants further contend that Section 2000d–7 does not create an enforceable waiver because (1) the purported waiver is ambiguous, and (2) there is an insufficient relationship between the purpose of the expenditures under which WMATA receives federal funding and the conditions imposed by the Rehabilitation Act. *See South Dakota v. Dole,* 483 U.S. 203, 207, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987).

First, for the reasons addressed above, the Court concludes that the waiver is unambiguous. Second, Congress' enactment of Section 2000d–7 is reasonably related to the federal interest in remedying employment discrimination against disabled persons. In *Conrail v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Supreme Court held that a suit for employment discrimination under Section 504 "may be maintained even if petitioner receives no federal aid the primary purpose of which is to promote employment." *Id.* at 637, 104 S.Ct. 1248. In so doing, the Supreme Court recognized Congress' interest in prohibiting employment discrimina-

tion based on disability and the relationship between that interest and its grant of federal funding. *Id.* at 633 n. 13, 104 S.Ct. 1248 ("Congress chose to ban employment discrimination against the handicapped, not by all employers, but only by the Federal Government and recipients of federal contracts and grants. As to the latter, Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a *quid pro quo* for the receipt of federal funds").

8. Defendant contends that discrimination is distinct from retaliation, and that retaliation is therefore not prohibited by the Rehabilitation Act. However, it is clear from the plain language of Section 504 of the Rehabilitation Act and Section 503 of the ADA that retaliation is a form of employment discrimination under the Rehabilitation Act.

which incorporates by reference § 12203(a) of the ADA, provides in relevant part that 'no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act' ") (quoting 42 U.S.C. § 12203(a)). The Rehabilitation Act therefore does include a cause of action for retaliation.

### C. Plaintiff's Complaint Sufficiently States a Claim for Retaliation Under the Rehabilitation Act

■ To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) the employer was aware of the activity; (3) the plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McGill v. Munoz,* 203 F.3d 843, 845 (D.C.Cir.2000).

WMATA contends that Duncan has failed to establish that he engaged in statutorily protected activity. Alternatively, Defendant contends that Plaintiff has failed to establish a causal connection between any protected activity and his termination.

### 1. Plaintiff Has Alleged That He Engaged in Protected Activity

■ As addressed above, under the anti-retaliation provision of the Rehabilitation Act, statutorily protected activity includes "oppos[ing] any act or practice made unlawful by this Act or ... ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). The act or practice made unlawful by the Rehabilitation Act is discrimination "solely by reason of ... his disability." 29 U.S.C. § 794(a).

Here, Plaintiff has sufficiently alleged that he engaged in this statutorily protected activity. Specifically, he alleges that he opposed disability discrimination made unlawful by both the Rehabilitation Act and the ADA when he filed suit, on December 22, 1994, for disability discrimination against WMATA,

and subsequently defended against WMATA's appeal in the D.C. Circuit. *See Duncan I; Duncan v. WMATA,* 240 F.3d 1110.

It is irrelevant, for purposes of this Motion to Dismiss, that Plaintiff's previous suit alleged claims under the ADA, and did not allege a violation of the Rehabilitation Act. The "act or practice" Plaintiff opposed in his first ADA case is the same "act or practice" made unlawful by the Rehabilitation Act—namely, disability discrimination.

Accordingly, treating Plaintiff's allegations as true, as the Court must in considering a Motion to Dismiss, Plaintiff has sufficiently alleged that, by filing and prosecuting the 1994 ADA suit against WMATA, as well as defending against WMATA's appeal, he engaged in a statutorily protected activity under the Rehabilitation Act.

### 2. Plaintiff Has Alleged a Causal Nexus Between His Protected Activity and Termination

■ Plaintiff has also sufficiently alleged a causal connection between this protected activity and his April 2001 termination from the AFC parts runner position.

As addressed above, in considering a Motion to Dismiss, the Court must accept as true all of the allegations set forth in the Complaint and draw all reasonable inferences in favor of Plaintiff.

Here, Plaintiff's Amended Complaint alleges that he successfully sued WMATA for disability discrimination, was reinstated to his AFC parts runner position, performed his job without incident or need for any accommodation for two-and-one-half years, defended the verdict of disability discrimination on appeal, and was subsequently terminated from that job one month after the jury verdict was reversed by the Court of Appeals. Accepting all of these allegations as true, Plaintiff has sufficiently alleged a causal nexus between his protected activity and termination.

Defendant contends that Plaintiff was terminated because he lost the appeal, and the basis for his reinstatement—the district court order and verdict—was no longer in effect. Defendant further contends that

Plaintiff himself has alleged that the D.C. Circuit ruling was the reason for his termination.

It is true that Plaintiff indicated, in his Amended Complaint, that WMATA advised him that he was terminated as a result of the D.C. Circuit ruling. However, in so doing, Plaintiff did not concede that Defendant's proffered reason for terminating him was the real reason for its actions. Moreover, Plaintiff need not prove, at this stage, that Defendant's proffered reason was pretextual. Instead, it is sufficient that Plaintiff alleged that his termination was retaliatory and that he was terminated despite performing his job without incident for two-and-one-half years.

In short, drawing all reasonable inferences in favor of Plaintiff and accepting his allegations as true, Plaintiff has sufficiently alleged a causal nexus between his protected activity and his April 2001 termination.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **denied**.